UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ANDRE CARTER**, <br><br> Petitioner, <br><br> vs. <br><br> **JEFF TANNER**,[1] <br><br> Respondent. | 2:22-CV-12972-TGB-APP <br><br> HON. TERRENCE G. BERG <br><br> **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL** |

Petitioner Andre Carter petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed through counsel, Carter challenges his convictions for three counts of assault with intent to commit murder, MCL § 750.83, two counts of resisting arrest, MCL § 750.81d(1), resisting arrest causing injury, MCL § 750.81d(2), possession of less than 25 grams of cocaine, MCL § 333.7403(2)(a)(v), felon in possession of a firearm, MCL § 750.224f, and eight counts of possession of a firearm during the commission of a felony, second offense, MCL § 750.227b. Carter raises four claims for relief. The Court denies

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases. Thus, the Court substitutes Jeff Tanner, the warden at the facility where Carter is presently incarcerated, as Respondent.

the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I. BACKGROUND

Carter's convictions arise from a shootout with police in the City of Detroit on December 1, 2016. The Michigan Court of Appeals summarized the facts of the case as follows:

> Early in the morning of December 1, 2016, Detroit Police Officers Vitaly Borshch, Darius Shepherd, and Antonio Williams were on routine patrol in Detroit on Hull Street. They were in full uniform and riding in a fully marked police vehicle. As they were patrolling, Officer Borshch noticed a Mini Cooper parked in the street, away from the curb. The car's lights were on and the engine was running, but no one was inside. The officers stopped to investigate for a "simple civil infraction." The officers saw an unknown male on the sidewalk near the car, and another male on the porch of the house in front of which the car was parked. The officers testified that as soon as they got out of their vehicle to investigate, the man on the porch, defendant, began firing at them. The unknown man ran away, but none of the officers saw where he went. Defendant ran from the porch to the driveway north of the house, and then toward the backyard, ignoring police commands to stop, while firing additional rounds at the officers during his flight. Officer Borshch received a graze gunshot wound.
>
> The officers followed defendant and returned fire. Defendant climbed over a fence and headed down an alley. Police recovered a green and silver gun near the fence over which defendant had climbed. Defendant was eventually located lying in the backyard of a vacant house, suffering from multiple gunshot wounds. Michigan State Troopers helped render aid until emergency medical personnel responded.

2

Defendant was transported to the hospital for treatment of his injuries. Officer Adnan Balija was with defendant at the hospital. The officer collected defendant's belongings, which included a sock that contained 21 .40-caliber rounds of ammunition. While going through defendant's clothing, "crack rocks" fell out of the jacket defendant was wearing. Officer Balija also recovered a "suspected crack pipe" from defendant's clothing. The parties stipulated that the substance found in defendant's clothing was cocaine. The defense also stipulated that defendant had previously been convicted of a specified felony and had not regained his right to lawfully possess a firearm.

The defense theory at trial was that Clay Stanley, who had spent the evening with defendant, was driving a Mini Cooper vehicle owned by defendant's aunt to a gas station, but parked it in the street and got out just before the police arrived. Stanley was purportedly the man that the officers had observed standing on the sidewalk near the Mini Cooper. The defense contended that it was Stanley who fired the first two shots, which set off the chain of events. When Stanley ran off, defendant followed him into the backyard and the police ran after both of them. A neighbor testified that she heard someone say, "I surrender, I surrender," before additional shots were fired. Although defendant admitted possessing a firearm during the incident, he denied firing it and he claimed he tossed his gun on the ground after realizing that the men chasing him were police officers; police never recovered this gun. Defendant denied using or possessing the gun the police found by the fence, and the police did not find any spent shell casings in the areas from which the officers claimed defendant shot at them. The defense maintained that defendant never fired any shots at the officers and did nothing wrong, and that the case involved a cover up by the police to avoid responsibility for shooting defendant for no reason.

*People v. Carter*, No. 340645, 2020 WL 6814659, at *1-2 (Mich. Ct. App. Nov. 19, 2020).

Carter filed a motion for a new trial and evidentiary hearing on May 24, 2018. He argued that his defense counsel was ineffective, the verdict was against the great weight of the evidence, and the prosecutor committed misconduct. The trial court held a hearing during which Carter and defense counsel testified. The trial court then denied the request for a new trial.

The Michigan Court of Appeals affirmed Carter's convictions on his appeal by right. *People v. Carter*, No. 340645, 2020 WL 6814659 (Mich. Ct. App. Nov. 19, 2020). On September 8, 2021, the Michigan Supreme Court denied Carter leave to appeal. *People v. Carter*, 508 Mich. 924 (2021).

Carter then filed the instant petition for a writ of habeas corpus through counsel. He seeks a writ of habeas corpus on the following grounds:

> I. Mr. Carter was denied the effective assistance of counsel when trial counsel failed to make an adequate investigation or to secure the testimony of an expert in gunshot residue testing, undermining confidence in the trial's outcome.
>
> II. Mr. Carter was denied a fair trial by the prosecution's introduction of knowingly perjured testimony and its denigration of the defense.
>
> III. Mr. Carter was denied the right to present a defense when deprived of the opportunity to impeach an important witness.
>
> IV. All defendants enjoy a due process right to a fair trial undeterred by inadmissible and unfairly prejudicial evidence.

4

Mr. Carter was denied his right to fair trial by the judge's admission of irrelevant but highly prejudicial accusations by a neighbor who had accused Carter of perpetrating crimes upon him.

## II. LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 584 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.

86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

In his first claim, Carter argues that defense counsel was ineffective for (1) failing to listen to one of four recordings of phone calls Carter made from jail, (2) failing to object to admission of dashcam footage or to move for the admission of favorable dashcam footage, and (3) failing to secure an expert to testify about the absence of gunshot residue on Carter's hands.

#### 1. *Strickland v. Washington*

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential *Strickland* standard described above and the deferential standard of AEDPA. *See Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of habeas petition). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

### 2. Exhaustion of State Court Remedies

Respondent argues that Carter's ineffective assistance of counsel claims are unexhausted. Respondent is incorrect.

A state prisoner seeking federal habeas relief must exhaust available state court remedies before raising a claim in federal court. *Winburn v. Nagy*, 956 F.3d 909, 913 (6th Cir. 2020). To satisfy this requirement, the claims must be "fairly presented" to the state courts, meaning that the prisoner must have asserted both the factual and legal bases for the claims in the state courts. *See Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004). Exhaustion also requires that the petitioner invoke "one full round" of the state's appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner bears the burden of proving exhaustion. *Nali v. Phillips*, 681 F.3d 837, 852 (6th Cir. 2012).

The state court record shows that Carter presented the legal and

factual bases for these claims in the Michigan Court of Appeals and Michigan Supreme Court. ECF No. 6-21, PageID.1876-81, 1893-94; ECF No. 6-22, PageID.1916-21, 1939-40. The claims therefore are properly exhausted.

### 3. Jail Calls

Carter first argues that defense counsel was ineffective for failing to listen to four jail telephone calls before trial. Two calls were made on December 14, 2016, one on December 16, 2016, and one on December 18, 2016. On the afternoon of the sixth day of trial, outside the presence of the jury, the trial court addressed the admissibility of the recordings. Defense counsel stated that he had listened to three of the four calls but had not yet listened to the fourth. During the fourth call, Carter made a statement that could be interpreted as a threat against the assistant prosecutor: "when I get out of here, I'm going to check out [the prosecutor] Molly Kettler and see what it is." ECF No. 6-11, PageID.1155.

Although counsel had not personally listened to one of the calls before that point, the record shows that he was familiar with the substance of all four calls, including Carter's statement about the prosecutor. *Id.* at PageID.1154. Counsel requested an adjournment until the following morning to review the recordings in full; the trial court denied the request. *Id.* Counsel then moved to exclude the call referencing the prosecutor on the ground that it was more prejudicial than probative. The trial court ruled the call admissible. *Id.* at

PageID.1156. Carter now argues that defense counsel was unprepared to present a persuasive exclusion argument, specifically faulting counsel for failing to argue that Carter was under the influence of opioids at the time of the phone calls or to present medical evidence regarding their effects.

The Michigan Court of Appeals rejected this claim:

> The record does not support the claim that defense counsel was unprepared to address or respond to the recordings. Although counsel admitted having not reviewed one of the four telephone recordings before trial, he was aware of the substance of defendant's statements in that call. Further, there was a break in the trial before all of the calls were played, which allowed counsel time to review the calls and raise any objections to their admission. Defendant complains that defense counsel did not provide him with the actual recordings before trial. However, counsel testified at the post-trial evidentiary hearing that jail personnel prevented him from taking the recordings into the jail, even though he had an order from the court to do so. In addition, defendant admitted at the hearing that, prior to trial, defense counsel gave him a sheet of paper with specific incriminating statements from the recordings highlighted, and that he and counsel had discussed the statements. Given this record, defendant has not shown that counsel performed below an objective standard of reasonableness, ... or failed to make defendant aware of the incriminating comments in the audio recordings in time for defendant to assist in preparing his defense.

> Defendant faults counsel for not attempting to mitigate the impact of the calls by introducing evidence that defendant was "heavily medicated and not in his right state of mind" when he made them because he was recovering from his gunshot injuries. The record does not support this claim. At trial, the prosecutor elicited from defendant that he was hospitalized

for approximately nine days before he was released to jail, and that he began making the recorded calls five to seven days after he arrived at the jail. There was no evidence that any medication defendant continued to receive at the jail affected his mental acuity or awareness at the time he made the calls. Further, even if defendant had been under the effects of pain medication when he made the calls, the record indicates that counsel may have had strategic reasons for not introducing such evidence. Defendant testified at the evidentiary hearing that he thought some portions of the recorded calls supported his account of the events, so defense counsel agreed to admit the calls. Contending that defendant was "not in his right state of mind" when he made the calls would have affected the exculpatory statements as well as the inculpatory statements; defendant has presented no legal or rational basis for arguing that he was lucid when making exculpatory statements, but muddled by pain medication when making inculpatory statements. Thus, to the extent the calls were deemed useful to support defendant's version of the events, counsel had a strategic reason for not introducing evidence that might have called into question the reliability of this evidence. Accordingly, defendant has not shown that trial counsel's handling of the telephone recordings supports a claim of ineffective assistance of counsel.

*Carter*, 2020 WL 6814659, at *3.

The Michigan Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established federal law. The trial transcript shows that although counsel listened to only three of the four phone calls before they were played for the jury, he was familiar with the substance of all four calls. He specifically moved to exclude the call referencing the prosecutor.

Carter argues that the court of appeals based its decision on an

10

incorrect factual premise–that he failed to provide any evidence on appeal showing that the medication he received at the jail impaired his mental acuity or awareness when he made the calls. *See Carter*, 2020 WL 6814659, at *3. Carter asserts that his affidavit provides this evidence. However, the affidavit states only that he could not remember the full content of the calls because of pain medication. *See* ECF No. 1-3, PageID.52-53. It does not offer proof that his statements during the calls were actually impaired, inaccurate, or involuntary because of the medication. He also does not identify any specific statement that was affected.

Beyond this unsupported medication-related argument, Carter does not explain what additional argument counsel could have offered to exclude the phone calls. He therefore fails to establish a reasonable probability that the trial court would have excluded the calls had counsel advanced the argument Carter now proposes.

Moreover, Carter acknowledged at the evidentiary hearing that some portions of the jail calls may have been beneficial to the defense. ECF No. 1-1, PageID.40, n.4. In light of that concession, he cannot overcome the strong presumption that counsel made a reasonable strategic decision not to undermine the reliability of the recordings by arguing that Carter was not in his right state of mind when he made them.

Accordingly, Carter has not shown that the state court's rejection

11

of this ineffective assistance claim was unreasonable.

### 4. Dashcam Video

Next, Carter alleges that counsel was ineffective for stipulating to the admission of dashcam footage of the scene after the shooting. He contends this footage was irrelevant and improperly included police radio transmissions that he characterizes as hearsay. He also asserts that counsel was ineffective for failing to obtain dashcam footage from Officer Borshch's vehicle which, he speculates, would have shown the actual shooter.

The Michigan Court of Appeals rejected these arguments, concluding that Carter failed to rebut the presumption that counsel's decisions were reasonable trial strategy and failed to demonstrate prejudice. *Carter*, 2020 WL 6814659, at *3-4. During the evidentiary hearing, defense counsel explained that he did not object to the dashcam footage because it supported the defense theory—namely, that defendant did not realize it was the police who had pulled up alongside the Mini Cooper because their emergency lights were not activated. *Id.* The court also rejected Carter's claim that the dashcam footage contained damaging hearsay "chatter" noting that he failed to identify any specific radio transmission or explain how it was prejudicial. *Id.* The court of appeals concluded that Carter failed to overcome the presumption that stipulating to the admission of the video was sound trial strategy or to establish that, but for the admission of the evidence, there is a reasonable

probability that the result of the proceeding would have been different. *Id.*

The Michigan Court of Appeals also rejected Carter's argument regarding Officer Borshch's dashcam footage because Carter presented no evidence that such a recording existed. *Id.* at \*4. He similarly failed to produce evidence in this Court that a video existed or that it was favorable to the defense. Conclusory allegations of ineffective assistance of counsel are insufficient to warrant habeas relief. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) (providing that "conclusory and perfunctory" allegations of ineffective assistance "are insufficient to warrant habeas relief" (emphasis omitted)).

Accordingly, the Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief is not warranted on this claim.

### 5. Expert Witness

Lastly, Carter argues that defense counsel was ineffective for failing to retain an expert in gunshot residue. The Michigan Court of Appeals denied this claim because Carter failed to submit an affidavit or an offer of proof from a qualified expert stating what the expert's testimony would have been. *Carter*, 2020 WL 6814659, at \*8.

Carter has not identified a particular expert witness who would have offered favorable testimony, either in state court or here. A claim that trial counsel was ineffective for failing to call an expert witness

13

cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). On this record, Carter has failed to show that the Michigan Court of Appeals unreasonably rejected his claim.

### B. Prosecutorial Misconduct

Next, Carter claims that he was denied a fair trial because of prosecutorial misconduct. Specifically, he claims that the "prosecution admitted significant testimonial evidence that was inconsistent with the physical evidence." ECF No. 1-1, PageID.43. He also claims that the prosecutor denigrated the defense during closing argument by repeatedly calling Carter a liar.[2]

### 1. Inconsistent Testimony

First, Carter claims that the prosecution knowingly admitted perjured testimony from Officers Borshch, Shepherd, and Williams, who each testified that Carter shot at them before running from the porch. He argues that this testimony must have been false because it was inconsistent with the physical evidence. Second, Carter claims that

---

[2] Respondent argues that this portion of Carter's prosecutorial misconduct claim is procedurally defaulted. Procedural default is not a jurisdictional bar to reviewing the merits of a habeas petition. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits."). In the interest of efficiency and completeness, this Court will address the merits of this claim. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (noting courts may "reach the merits of a petitioner's claim" before analyzing procedural default, especially when the "procedural issues are complicated" but the "merits are easily resolvable").

Officer Balija's testimony that Carter had a crack pipe in his clothing when it was searched at the hospital was clearly false because that evidence was not included in discovery and was not found when Carter was searched at the scene.

A prosecutor's conduct violates a criminal defendant's constitutional rights only if the conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due process rights. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (per curiam). To prevail on such a claim, a defendant must show that the prosecution knowingly presented false testimony that materially affected the proceeding. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). But "mere inconsistencies" in the testimony are not enough. *Id.* A defendant must prove that the testimony was "indisputably false." *See id.* at 822-23.

The Michigan Court of Appeals considered this claim on direct review and rejected it. First, with respect to the crack pipe, the court of appeals explained: "Assuming for the sake of argument that the existence of the crack pipe had not been reported or shared before trial, that fact, alone, does not establish that Officer Balija's testimony was false." *Carter*, 2020 WL 6814659, at *7.

15

Carter has not shown that the state court unreasonably denied this claim. The record supports the state court's conclusion that this relatively minor inconsistency was insufficient to establish the prosecutor's knowing use of false testimony. *See Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019) (holding mere inconsistencies were insufficient to sustain a claim of perjury).

Carter's claim that the officers' testimony that he fired shots at them from the porch before fleeing must be false because the testimony was not corroborated by physical evidence is also meritless. The Michigan Court of Appeals rejected this claim because it asked the court to reweigh the officers' credibility, which the court would not do. *Carter*, 2020 WL 6814659, at *7. The state court also explained that the officers' testimony was not necessarily inconsistent with the physical evidence:

> At trial, three police officers identified defendant as the person who fired several gunshots at them and ignored their commands to stop. Deputy Robert Charlton, a firearms examiner with the Oakland County Sheriff's Department, examined the firearms and firearm evidence collected from the scene. He testified that four firearms were recovered: three issued by the Detroit Police Department and the fourth, a Springfield Armory firearm with a green grip and silver slide.

> \*\*\*

> Defendant relies primarily on the absence of physical evidence to support his argument that the officers' testimony could not be believed. He contends that, although he was not wearing gloves, his fingerprints and DNA were not found on

16

the Springfield Armory firearm, and no gunshot residue test was performed to suggest that he was the shooter. However, defendant has presented no evidence indicating that a gunshot residue test should have been performed, and it is pure speculation that the results of such test would support his claim that he did not fire a gun. It is true that neither defendant's fingerprints nor DNA were found on the Springfield Armory weapon, but forensic scientist Erica Anderson testified that there was not enough DNA from the handgun to attribute its use to anyone; thus, she could neither include nor exclude defendant as the user.

Regarding the shell-casing evidence, defendant contends that the number of shell casings recovered does not support the officer's testimony regarding how many rounds were allegedly fired at them or that defendant fired the shots. However, police evidence technician Officer Raymond Diaz testified that it was not generally unusual to be unable to find all of the fired bullets or shell casings at a scene for various reasons. Diaz testified that the Hull Street scene was poorly lit, especially in the backyard, and the evidence technicians did not have the use of a metal detector. Asked if he could "say with absolute certainty that you could find every piece of evidence in that yard with all the dead leaves on the ground[,]" Officer Diaz responded that he could not. His testimony is confirmed by the fact that the number of shell casings recovered from the weapons issued by the Detroit Police Department was less than half the number of rounds fired.[1] Defendant also testified that there were a lot of leaves and debris around, and that when he got up off the ground after having been shot, leaves were stuck all down the front of his body. Given the poor lighting, the lack of a metal detector, the blanket of leaves covering areas of the search, and the obvious fact that far more shots were fired from the police weapons than were recovered by the evidence technicians, the jury might reasonably have given less weight to the shell-casing evidence than to the officer's testimony.

---

17

[1]Sergeant Michael Jackson testified that, after receiving the weapons of the three officers involved in the incident, he determined that they had fired a combined total of 38 rounds. Yet, Officer Charlton testified to the recovery of only 18 shell casings attributable to the officers' weapons.

*Carter*, 2020 WL 6814659, at \*5.

The Michigan Court of Appeals did not unreasonably reject this claim. As explained, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony, a habeas petitioner must show that a witness' statement was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). The prosecution offered testimony explaining the absence of physical evidence to support the officers' testimony, which the jury reasonably could have accepted. Carter has not shown that the officers' testimony was false, let alone indisputably so. The jury reasonably could have accepted the explanation offered by the prosecution for the absence of supporting physical evidence.

For these reasons, Carter has not shown the state court's resolution of this claim was contrary to, or an unreasonable application of, clearly established federal law.

### 2. Closing Argument

Next, Carter objects to the following portion of the prosecution's closing argument:

I want to start out by simply pointing out to you that the

18

Defendant is a complete, total, and utter liar. Why do I say that? Why do I ask you to discount his version of events? I'll tell you why.

Because this Defendant has been around the block a few times. You heard that from various sources in various ways. And his behavior, his testimony, and his conversations on the jail calls show you exactly what he has done in this case, which is that he is a person who has, one, a very healthy ego and, two, thinks that he can talk his way out of anything. And he's willing to tell any lie possible to do that, to get out of being held responsible for what he did. And, you can hear that on his jail calls. You can hear how he kind of bounces off versions of events to see how they kind of go over. And, you can see him—you can picture in his mind him working through this, and how am I going to get out of what I did—what I so clearly did.

But, most importantly I would indicate that the reason you know what a liar the Defendant is, is because he sat here right in your face and lied to you.

ECF No. 6-14, PageID.1486-87.

The Michigan Court of Appeals rejected this claim:

At trial, defendant presented a version of events starkly at odds with the testimony of several police officers. Accordingly, the prosecutor was permitted to argue that the evidence showed that defendant was lying and that his version of events did not make sense. The record demonstrates that the prosecutor called defendant's credibility into question by drawing sharp contrasts between defendant's trial testimony and statements he made during his jailhouse telephone conversations. Under these circumstances, the prosecutor's remarks referring to defendant as a "liar" did not constitute plain error.

*Carter*, 2020 WL 6814659, at \*7.

19

Carter has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law. "It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Improper remarks include "blunt comments ... [like] 'I think he [the witness] was candid[,] I think he is honest[;]' or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses a*nd their testimony...." United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). But this does not mean that the prosecution cannot assert that a defendant is lying. The Sixth Circuit has explained:

> This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony. To avoid impropriety, however, such comments must reflect reasonable inferences from the evidence adduced at trial. Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility.

*Id.* at 551.

The prosecutor did not attack Carter's credibility based on her personal belief nor did she suggest that he lacked credibility based on any information other than that presented at trial. Instead, the prosecutor's references to Carter's credibility were tied to the evidence presented at

20

trial throughout her closing argument. Accordingly, Carter has not shown that the denial of this claim was unreasonable.

### C. Right to Present a Defense

In his third claim, Carter argues that he was denied his right to present a defense when the trial court denied the defense request to play an audio recording of witness Desha Hokes' prior statement to police that he says was inconsistent with her trial testimony. This claim was raised on direct review and denied on the merits by the Michigan Court of Appeals:

> Defendant also argues that the trial court denied his right to present a defense when it ruled that he could not admit for impeachment purposes a previously recorded interview that prosecution witness Desha Hokes gave to the police. The trial court barred admission of the recording as hearsay, but instructed counsel that he could ask Hokes "was she asked a certain question and did she give a certain answer and you can state what that was on the record and ask if she did or did not make it ...." The trial transcript shows that this is precisely what counsel did. Further, he confirmed at the post-trial evidentiary hearing that he was able to introduce the impeachment material he wanted through cross-examination, concluding: "I thought that was good testimony." Given defendant's impeachment of Hokes with the prior statements contained on the recording, he has no basis for asserting that the trial court violated his right to present a defense by ruling that the recording itself was inadmissible.

*Carter*, 2020 WL 6814659, at *8.

The right of an accused person to present a defense has long been recognized as "a fundamental element of due process." *Washington v.*

*Texas*, 388 U.S. 14, 19 (1967); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). However, a defendant's right to present evidence is not unlimited, and it may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). When deciding whether the exclusion of evidence impairs a defendant's right to present a defense, courts ask whether the defendant was afforded "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

First, to the extent Carter challenges the state court's application of state evidentiary rules, that claim is not cognizable in these proceedings because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

The Michigan Court of Appeals held that Carter was not deprived of a meaningful opportunity to present a complete defense. Carter has failed to show that conclusion was unreasonable. As explained above, defense counsel cross-examined Hokes extensively about the content of the recording. Because defense counsel was able to address the substance of the audio recording, it was not unreasonable for the appellate court to conclude that Carter had a meaningful opportunity to present his defense. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

Lastly, the Court is unpersuaded by Carter's argument that Hokes' testimony was particularly important because she "was one of the few eyewitnesses that was not a police officer in a case full of police officers with a motive to commit perjury." ECF No. 1-1, PageID.47. Carter provides no record support for the claim that the officers involved had a motive to testify falsely. Nor does he identify any evidence suggesting coordinated misconduct or bias. Absent such support, the assertion is speculative and does not meaningfully advance his ineffective assistance argument.

This claim is without merit.

### D. Evidence of Prior Assault

In his fourth claim, Carter argues that his due process right to a fair trial was violated by the admission of testimony that Carter had previously assaulted and fired a gun at his neighbor Deonte Love. Respondent argues that this claim is procedurally defaulted. Carter counters that the claim should be reviewed *de novo* because, although it was properly raised, the Michigan Court of Appeals failed to address the due process portion of his claim. The Court need not decide this question because the claim fails even under *de novo* review.

Carter has failed to show that the admission of the "other acts" evidence violated his constitutional rights. "[S]tate-court evidentiary rulings [do not] rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and

23

conscience of our people as to be ranked as fundamental.'" *Wilson v. Sheldon*, 874 F.3d 470, 475-76 (6th Cir. 2017) (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). Here, Carter has neither established that the admission of this evidence violated his due process rights nor that it offended some deeply rooted "principle of justice." He has not identified any clearly established Supreme Court precedent to support this claim for relief. And "no clearly established Supreme Court precedent . . . holds that a state violates due process by permitting ... other bad acts evidence." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003)).

Carter has therefore not established that he is entitled to federal habeas relief on this claim.

## IV. CONCLUSION

The Court **DENIES** the petition for a writ of habeas corpus. The Court further finds that reasonable jurists would not debate this Court's resolution of Petitioner's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). If Petitioner nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

Dated: March 11, 2026          /s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

24